IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|           ) | Case No. 2:23-cv-00452-JLB-KCD |
|      Plaintiff,    ) | |
|           ) | |
|      v.    ) | |
|           ) | |
| MARK ANTHONY GYETVAY,    ) | |
|           ) | |
|      Defendant.    ) | |

**UNITED STATES' RESPONSE IN OPPOSITION
TO MARK ANTHONY GYETVAY'S MOTION TO DISMISS**

     The United States seeks to collect penalties assessed against Mark Anthony Gyetvay for his willful failure to timely and accurately report his financial interest in foreign bank accounts on his 2014 FBAR, as required by 31 U.S.C. § 5314.

     In moving to dismiss,[1] Mr. Gyetvay argues: (1) the willful FBAR penalty related to the Felicis account should be limited to a $100,000 statutory maximum; (2) the Complaint fails to state a plausible claim that Mr. Gyetvay's failure to accurately file his 2014 FBAR as related to the Felicis account was willful; (3) the willful FBAR penalty related to the Felicis account is "arbitrary and capricious" and violates the Administrative Procedure Act; and (4) the willful

---

[1] Mr. Gyetvay's motion is a partial motion to dismiss the Complaint because he only moves to dismiss the United States' claim as related to the account titled in the name of Felicis Commercial Corp. ("Felicis"), a British Virgin Island nominee corporate entity for which Mr. Gyetvay was the sole beneficial owner. Mr. Gyetvay does not ask the Court to dismiss the United States' claim that he willfully failed to report an account titled in the name of Opotiki Marketing ("Opotiki"), a Belize nominee corporate entity for which Mr. Gyetvay was the sole beneficial owner.

FBAR penalty related to the Felicis account is excessive under the Eighth Amendment.

Mr. Gyetvay's arguments are meritless—and largely require the Court to make determinations inappropriate at the motion to dismiss stage.

First, the amount of the penalty assessed for Mr. Gyetvay's willful failure to accurately report the Felicis account on his 2014 FBAR is valid under the plain language of 31 U.S.C. § 5321(a)(5)(C). Second, when taken as true, the Complaint's allegations state a plausible claim that Mr. Gyetvay's violation as related to the Felicis account was willful. Third, any alleged APA violation cannot be decided without the benefit of the administrative record, nor is the APA a proper basis to move to dismiss the United States' claim. And fourth, a civil FBAR penalty is not subject to the Eighth Amendment excessive fines clause. Additionally, the latter two arguments, which are procedurally awkward at best, first require a determination of the willfulness issue.

For these reasons, Mr. Gyetvay's motion should be denied. But if his motion is granted, the United States requests leave to amend its complaint.

## DISCUSSION

### I.    The willful FBAR penalty related to the Felicis account is not limited to a $100,000 statutory maximum.

The Bank Secrecy Act imposes record-keeping and reporting requirements on United States citizens who "make[] a transaction or maintain[] a relation for any person with a foreign financial agency." 31 U.S.C. § 5314(a). Though Congress did not define what constitutes a "relation" with a foreign financial agency, the

implementing regulations provide that the "relationship" that must be reported is a U.S. person's "financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a). A U.S. person maintains a "financial interest" in a foreign account for which an entity holds legal title to the account, if the U.S. person owns directly or indirectly more than 50 percent of the voting power, total value of the equity interest or assets, or interest in profits. 31 C.F.R. § 1010.350(e)(2)(ii).

"When it comes to the duty to file reports, the relevant duty in [this] case, the statute says that reports 'shall contain' information about 'the identity and address of participants in a transaction or relationship,' 'the legal capacity in which a participant is acting,' and 'the identity of real parties in interest,' along with a 'description of the transaction.'" *Bittner v. United States,* 598 U.S. 85, 92– 93 (2023) (citing 31 U.S.C. § 5314(a)(1)–(4)). Section 5314 also directs the Secretary to prescribe "the way and . . . the extent" to which reports must be filed. 31 U.S.C. § 5314(a). That reporting mechanism is the "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." 31 C.F.R. § 1010.350(a). Each U.S. person with interests in or authority over foreign bank accounts with aggregate balances exceeding $10,000 in a given year must file an FBAR. *See* 31 C.F.R. §§ 1010.306(c), 1010.350(a).

Under 31 U.S.C. §5321, the Secretary "may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314." 31 U.S.C. § 5321(a)(5)(A). The maximum civil penalty for a non-willful

violation of any provision of section 5314 is $10,000. 31 U.S.C. § 5321(a)(5)(B). The maximum civil penalty for a willful violation of any provision of section 5314 is "the *greater* of $100,000 . . . or . . . in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, [50% of] the balance in the account at the time of the violation." *United States v. Schwarzbaum,* 24 F.4th 1355, 1359 (11th Cir. 2022) (citing 31 U.S.C. § 5321(a)(5)(C)(i), (D)(ii)) (alteration and omission in original).

Mr. Gyetvay contends that the willful FBAR penalty related to the Felicis account should be limited to a $100,000 statutory maximum under Section 5321(a)(5)(C)(i), because Mr. Gyetvay does not fall into the "subclass of willful violations" under Section 5321(a)(5)(D)(ii) that triggers a maximum penalty of up to 50 percent of the account balance at the time of the violation. More specifically, Mr. Gyetvay argues that he did not fail to report on his 2014 FBAR: (1) the existence of the Felicis account or (2) any identifying information required to be provided with respect to the Felicis account.

As alleged, Mr. Gyetvay timely filed his 2014 FBAR on June 25, 2015. ECF No. 1 ¶ 107. On that 2014 FBAR, Mr. Gyetvay falsely reported that he had signatory authority over, but no financial interest in, the Felicis account. *Id.* at ¶¶ 23, 108. And contrary to the FBAR's requirements, Mr. Gyetvay failed to report the highest balance of the Felicis account for 2014. *Id.* at ¶ 108. Both of these constitute "identifying information" that Mr. Gyetvay was required to report.

4

Mr. Gyetvay muddies the waters by misapplying the doctrine of *noscitur a sociis*. ECF No. 13 at 15. The Supreme Court has applied this doctrine to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015) (internal quotations omitted). But Section 5321(a)(5)(D)(ii) contains a disjunctive "or." *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1135, 1141 (2018) (explaining that "or" is "almost always disjunctive") (internal quotations omitted). So, "identifying information" should not be read in conjunction with its opposed disjunctive option "the existence of an account."

Instead, *noscitur a sociis* dictates that "identifying information" should be read in conjunction with the words that immediately follow. That is, a 50 percent penalty is appropriate for any "violation involving a failure to report . . . any identifying information *required to be provided with respect to an account*." 31 U.S.C. § 5321(a)(5)(D)(ii) (emphasis added). In other words, the Bank Secrecy Act authorizes a penalty for any failure to provide information required by the FBAR form. This is consistent with Section 5314, which directs the Secretary of the Treasury to "require" U.S. persons to "file reports." 31 U.S.C. 5314(a). Section 5321 then appropriately authorizes a penalty for the failure to file a report in compliance with the Secretary's requirements. *See* 31 U.S.C. 5321(a)(5)(A).

Accordingly, Mr. Gyetvay can be penalized for his failure to report the maximum value of the Felicis account, as required by the FBAR form.[2] Moreover, Mr. Gyetvay can also be penalized for his failure to accurately report his financial interest in the Felicis account. By failing to truthfully and accurately report his financial interest, Mr. Gyetvay concealed "the identity of the real part[y] in interest," and deprived the Government of the account-specific information that Section 5314 requires disclosure of through the FBAR. *See* 31 U.S.C. § 5314(a)(3).

The information that must be reported on an FBAR supplies "the government with information potentially relevant to various kinds of investigations, criminal and civil alike." *Bittner,* 598 U.S. at 99. Indeed, FBARs "are designed to help the government trace funds that may be used for illicit purposes and identify unreported income that may be subject to taxation separately under the terms of the Internal Revenue Code." *Id.* at 719. Reporting one's financial interest in a foreign account and the highest account balance as required by the FBAR, not only "identifies" the account, but also puts the

---

[2] Mr. Gyetvay claims that the FBAR form allowed him to check "Maximum account value unknown." Although this is an option on the form, it does not mean it was permissible for Mr. Gyetvay to utilize it. In reviewing the online FBAR form, if a filer places their cursor over that checkbox, it instructs the filer: "Check 'Maximum account value unknown' if the value of the account cannot be determined.'" This is consistent with FinCEN's instructions, at p. 11 ("For United States persons with a financial interest in or signature authority over fewer than 25 accounts that are unable to determine if the aggregate maximum account values of the accounts exceeded $10,000 at any time during the calendar year, complete the appropriate Part II, III, IV, or V section for each of these accounts and check the "amount unknown" box, item 15a). The United States does not believe this option was available to Mr. Gyetvay because the maximum value of the Felicis account was determinable. If Mr. Gyetvay disagrees, that will be an issue for discovery, not a motion to dismiss.

government on notice of possible unreported income as related to Mr. Gyetvay specifically. And to the extent Mr. Gyetvay contends that "once the government knows an account number and financial institution, it can subpoena further information . . . directly from the bank itself," he fails to appreciate the immense burden it would place on the U.S. government and foreign banks. And to the extent such a practice would even be tenable, it would certainly implicate issues of international comity. The Bank Secrecy Act is designed to obviate these issues by placing the burden of reporting complete and accurate information on the filer.

Mr. Gyetvay willfully failed to report "identifying information required to be provided" on the FBAR with respect to the Felicis account as contemplated by plain language of Section 5321(a)(5)(D)(ii). And though Mr. Gyetvay attempts to invoke the rule of lenity, it is not applicable where the words of the statute plainly impose the penalty. *Bittner,* 598 U.S. at 102.[3] The penalty is not limited to a $100,000 statutory maximum.[4]

---

[3] The rule of lenity was discussed in Part II-C of the *Bittner* decision, which was authored by Justice Gorsuch and joined by only Justice Jackson. Justices Roberts, Alito, and Kavanaugh joined in the judgment of the Court, except for Part II-C. With only two justices joining, *Bittner*'s discussion of the rule of lenity is nothing more than non-binding dicta.

[4] And for what it's worth, Mr. Gyetvay assumes that the 50 percent account balance under Sections 5321(a)(5)(c)(ii) and (d)(ii) always imposes a harsher maximum penalty. But that is only true if an account has a balance greater than $200,000. Indeed, the statutory scheme contemplates that these types of willful violations will always at least be subject to a maximum penalty of $100,000. *See* § 5321(a)(5)(c)(i). For Mr. Gyetvay, the penalty is more exacting because he failed to accurately report the required identifying information for an account with a $79.2 million balance.

## II.   The factual allegations of the Complaint, taken as true, state a plausible claim for a willful FBAR violation as related to the Felicis account.

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requirement is designed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (cleaned up). With this fundamental principle in mind, Mr. Gyetvay has fair notice of the basis for the willful FBAR penalty assessments against him. And the facts, which must be taken as true, clearly establish Mr. Gyetvay's willfulness.

### A.   Mr. Gyetvay is collaterally estopped from contesting his willful FBAR violation—even as to the Felicis account.

As alleged in the Complaint, Mr. Gyetvay was criminally charged in a fifteen-count indictment. ECF No. 1 ¶¶ 111–13. Count Thirteen of the indictment charged that Mr. Gyetvay willfully failed to file an accurate FBAR for 2014. ECF No. 1 ¶ 118. Specifically, Count Thirteen alleged that Mr. Gyetvay failed to report the Opotiki account. ECF No. 1 ¶ 122. Count Thirteen also alleged that Mr. Gyetvay falsely and fraudulently reported that he had signatory authority, but no financial interest, in the Felicis account. ECF No. 1 ¶¶ 119–21. A jury found Mr. Gyetvay guilty on Count Thirteen. ECF No. 1 ¶ 123. Based on this conviction, Mr. Gyetvay is collaterally estopped from challenging his willful violations in this case.

*United States v. Kerr*, No. CV-19-05432-PHX-DJH, 2021 WL 778607 (D. Ariz. Mar. 1, 2021), is instructive. In that case, Mr. Kerr was similarly convicted of

8

a willful failure to file FBARs, which the United States argued precluded him from challenging the same issues civilly. *Id.* at *1–*2. The court explained:

> To apply the doctrine of collateral estoppel on an issue from a criminal trial: (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

*Id.* at *2 (internal citations omitted). In reviewing the elements, the court ultimately found that Mr. Kerr was precluded "from challenging that he willfully failed to file FBARs with respect to the accounts listed" in his criminal indictment, but found that Mr. Kerr was not precluded from challenging his civil assessment as to an account not listed in the indictment. *Id.* at *3.

As in *Kerr*, Mr. Gyetvay cannot seriously dispute elements one, two, and four for application of collateral estoppel. Mr. Gyetvay was indicted on numerous serious charges and had a full opportunity to defend against those charges. But this case goes beyond *Kerr* in one important regard: both accounts at issue in this civil case were identified in Mr. Gyetvay's criminal indictment. Accordingly, Mr. Gyetvay may be estopped from challenging his willful violations as to both the Opotiki and the Felicis accounts.

Even if collateral estoppel does not apply to preclude Mr. Gyetvay from challenging his assessment as to the Felicis account specifically, the jury that convicted Mr. Gyetvay for his willful failure to file an accurate FBAR for 2014

necessarily found certain elements of willfulness present. That is, the jury necessarily found that Mr. Gyetvay had knowledge of the requirement that he file an accurate FBAR for 2014. Thus, to establish that the IRS properly assessed a penalty regarding the Felicis account, the United States must allege only (and prove) that Mr. Gyetvay falsely reported his interest in the Felicis account. The United States has made that allegation. *See, e.g.*, ECF No. 1 ¶¶ 105–08, 126.[5]

## B.    Even without collateral estoppel, the Complaint alleges facts well-beyond a plausible claim of willfulness.

Mr. Gyetvay contends that the Complaint fails to state a claim for a willful FBAR violation—but only with respect to the penalties associated with the Felicis account—because a willful FBAR penalty may only be assessed where a taxpayer "willfully failed to disclose the account *and* file an FBAR." ECF No. 13 at 17 (emphasis modified).

Willful FBAR penalties may be assessed when a taxpayer fails to disclose an account and file an FBAR. And Mr. Gyetvay cites cases finding as much. But such violations are just two of the many circumstances for which the United States may assess a penalty under Section 5321. Indeed, the Supreme Court in *Bittner* recognized that the purpose of the Bank Secrecy Act is "'to require' certain 'reports' or 'records.'" 598 U.S. at 98 (quoting 31 U.S.C. § 5311). As noted by the

---

[5] The United States does not expect the Court to resolve collateral estoppel on a motion to dismiss. But, at the motion to dismiss stage, it is enough for the Court to recognize that the United States has pleaded facts that support its possible application. If Mr. Gyetvay continues to challenge facts that were established in his criminal trial, the United States intends to file an early motion for summary judgment to resolve, or at least narrow, the issues in the case.

dissent, this "authorizes the Secretary to impose a recordkeeping requirement in addition to a reporting requirement." *Id.* at 106 (Barrett, J., dissenting). This means that the Bank Secrecy Act authorizes a penalty for recordkeeping violations *wholly apart* from an FBAR form. Mr. Gyetvay's suggestion that a "willful penalty" is only appropriate when there is a complete omission of an account or an FBAR form is contrary to the purpose, plain language, and operation of the Bank Secrecy Act.

Further, even when considering so-called "FBAR violations," there are numerous possible violations of Section 5314, including the failure to file an FBAR, the failure to disclose the existence of an account on an FBAR, or the failure to provide any identifying information required by the FBAR. Here, the United States properly assessed a penalty against Mr. Gyetvay for his failure to provide all identifying information for the Felicis account—*i.e.*, his financial interest in the account and its maximum balance—as required by the FBAR form.

Mr. Gyetvay confuses this basic point by blending the determinations of 1) a violation of the Bank Secrecy Act, and 2) the separate determination of the appropriate penalty. First, if an individual violates "any provision of section 5314," a penalty is authorized. 31 U.S.C. § 5321(a)(5)(a). The second question is then whether that violation was "willful" or "non-willful." If the violation was "non-willful," the amount of the penalty is determined under Section 5321(a)(5)(B). But if the violation was "willful," the penalty is determined under Section 5321(a)(5)(C).

In other words, the type of violation—be it the failure to disclose an account on an FBAR form or the failure to file an *accurate* FBAR with all required identifying information—does not control the willfulness determination. Rather, the willfulness inquiry centers on whether a violation was committed by an individual who acted knowingly or with reckless disregard of the law. *See Schwarzbaum,* 24 F.4th at 1362–63. Thus, a violation of any provision of Section 5314 could be subject to a willful penalty—depending on the individual's circumstances and state of mind when committing the violation.

In any event, the Complaint plausibly alleges willfulness. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As mentioned above, "willful conduct, in the FBAR civil penalty context, includes knowing or reckless conduct." *Schwarzbaum,* 24 F.4th at 1362. The Eleventh Circuit has adopted an objective test for recklessness: did the individual's actions entail "an unjustifiably high risk of harm that is either known or so obvious that it should be known[?]" *United States v. Rum,* 995 F.3d 882, 890 (11th Cir. 2021). If so, the individual acted willfully. *Id.*

Mr. Gyetvay misconstrues this legal standard, by suggesting that the United States must identify a "harm" that results from his failure to file an accurate FBAR. That is not how recklessness is applied in FBAR cases, and Mr. Gyetvay cites no support for this bizarre application. In *Rum*, the Eleventh

12

Circuit confirmed that the determination of willfulness in FBAR cases includes reckless conduct. 995 F.3d at 889. In doing so, it agreed with the Third and Fourth Circuits that "willfulness based on recklessness is established if the defendant (1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and if (3) he was in a position to find out for certain very easily." *Id.* (internal quotations omitted) (citing *United States v. Horowitz*, 978 F.3d 80, 89 (4th Cir. 2020); *Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018)). Thus, the question is not whether there is harm to the United States *because of an FBAR violation*, but whether Mr. Gyetvay's actions created an unjustifiable risk that the United States would be harmed *by an FBAR violation*. The violation is the harm to the United States.

Viewed through the correct legal standard, the Complaint is rife with allegations that support a finding of willfulness—through either knowing violations of the FBAR requirement or recklessness. As alleged, Mr. Gyetvay is a financially sophisticated international businessman. He graduated with a Bachelor of Science degree in Accounting from Arizona State University in 1981 and obtained a certified public accountant license in 1992. ECF No. 1 at ¶¶ 15, 16. He served as an audit partner at PricewaterhouseCoopers, at which he performed audit, consulting, and various accounting related services for the firm's clients. *Id.* at ¶ 17. He went on to serve as the Chief Financial Officer for Novatek, Russia's largest independent natural gas producer, and even guided Novatek through its initial public offering on the London Stock Exchange. *Id.* at ¶¶ 17, 18.

13

The Complaint further recounts that Mr. Gyetvay retained a Swiss wealth advisory firm to help him hide and disguise his ownership and control of the Felicis account at the Swiss banks. *Id.* at ¶¶ 25, 26. With the firm's assistance, Mr. Gyetvay "concealed the existence, and tax consequences," of the Felicis account as it was transferred between different Swiss banks. *Id.* at ¶ 27. Notably, three months after Coutts requested evidence of U.S. tax compliance from Mr. Gyetvay, Mr. Gyetvay made his wife the beneficial owner of the Felicis account and thereafter transferred the assets to new accounts at Hyposwiss Privatbank Zurich. *Id.* at ¶¶ 28, 34, 35. In doing so, Mr. Gyetvay listed his wife's residence as a Moscow address, rather than the Naples, Florida address at which she was principally residing with Mr. Gyetvay. *Id.* at ¶ 35. Further, Mr. Gyetvay requested all correspondence be "retained at the bank" and sent only to Mr. Gyetvay's Zurich-based wealth advisors. *Id.* at ¶ 38.

In 2015, after Falcon Bank announced that it entered into a Non-Prosecution Agreement with the Department of Justice pursuant to the Swiss Bank Program, Mr. Gyetvay chose to enter the Streamlined Foreign Program, which required the least disclosure and smallest amount of penalty payment. *Id.* at ¶¶ 90, 91. By entering into the Streamlined Foreign program, Mr. Gyetvay certified that he did not have a U.S. abode and that he was physically outside of the United States for at least 330 full days for tax years 2011 through 2013. *Id.* at ¶¶ 90–93. Mr. Gyetvay stated, under the penalties of perjury, that he had

"worked and resided in Russia since 1995," despite owning a residence, and living, in Naples, Florida during the time period at issue. *Id.* at ¶¶ 93–94.

Since at least 2008, Mr. Gyetvay was explicitly aware of the requirement to file FBARs after his former accounting firm corresponded with him regarding his delinquent tax returns and FBARs. *Id.* at ¶¶ 50, 54. And despite being advised that he should file FBARs—and having accounting firms at his disposal to do so—Mr. Gyetvay failed to do so until he filed his 2014 FBAR in 2015, which was both incomplete and inaccurate. *Id.* at ¶¶ 99, 107–09.

Mr. Gyetvay's deliberate actions—spanning over a decade—taken in his endeavor to conceal his foreign accounts, support the inference that Mr. Gyetvay acted with the knowledge that his conduct was unlawful, or at the very least with recklessness to the obvious risk of harm. *See, e.g.*, *United States v. Green*, 457 F. Supp. 3d 1262, 1273 (S.D. Fla. 2020) (internal quotations omitted) (explaining that willfulness "may be proven through inference from conduct to conceal or mislead sources of income or other financial information") (quoting *Norman v. United States*, 138 Fed. Cl. 189, 192 (Fed. Cl. 2018), *aff'd*, 942 F.3d 111 (Fed. Cir. 2019)*; Kimble v. United States*, 141 Fed. Cl. 373, 384 (2018) (granting summary judgment and finding evidence of concealment where the taxpayer "instructed UBS not to send any account-related correspondence to the United States"), *aff'd*, 991 F.3d 1238 (Fed. Cir. 2021); *United States v. Gentges,* 531 F. Supp. 3d 731, 750–52 (S.D.N.Y. 2021); *United State v. Goldsmith*, 541 F. Supp. 3d 1058, 1091-92 (S.D. Cal. 2021).

Using the benefit of hindsight, Mr. Gyetvay suggests that he did not willfully violate Section 5314 by failing to accurately report the Felicis account on his 2014 FBAR because he belatedly provided the IRS with the correct information on his amended 2014 FBAR, which he filed nearly two years later. But the violation at issue in this case is for Mr. Gyetvay's willful failure to accurately report his financial interest in foreign bank accounts on his original 2014 FBAR. And, as discussed above, the Complaint contains a plethora of facts to support his willful FBAR violation for 2014. Although Mr. Gyetvay filed an amended FBAR two years later to correct his failure to provide the identifying information required by the FBAR, that does not obviate a previous willful FBAR violation. Returning the money doesn't mean you didn't rob the bank.

### III. The FBAR penalty related to the Felicis account is not arbitrary and capricious and does not violate the Administrative Procedure Act.

Mr. Gyetvay's third basis for dismissal, that the penalty related to the Felicis account is arbitrary and capricious and violates the APA, ventures well beyond the confines of a Rule 12 motion to dismiss. Indeed, in an apparent "throw everything at the wall and see what sticks" approach, Mr. Gyetvay constructs a new pleading standard for willful FBAR suits by which the government must proffer detailed allegations regarding the agency decision-making processes underlying an FBAR penalty calculation in order to state a claim for relief under Section 5321.

16

This argument is a defense, not a basis for dismissal. At the motion to dismiss stage, the government has sufficiently alleged facts to state a plausible claim for willful FBAR violations. And without the benefit of the administrative record—and a determination on Mr. Gyetvay's willfulness, which could foreclose consideration of the willful penalty calculation altogether—the Court should take the allegations as true and not wade into the merits of an APA claim. *See United States v. Schwarzbaum*, No. 18-cv-81147, 2019 WL 3997132, at *4 (S.D. Fla., Aug 22, 2019) (explaining the determination of whether the FBAR violations were willful "is a necessary first step to consideration of any other issues," including whether the FBAR penalties violated the APA).

## IV.   The FBAR penalty related to the Felicis account is not excessive and is not subject to the Excessive Fines Clause of the Eighth Amendment.

Mr. Gyetvay lastly argues that the government's claim should be dismissed because the $35 million penalty related to the Felicis account violates the Eighth Amendment because the harm caused by Mr. Gyetvay's violation was "minimal." This argument is premature and cannot be decided until the Court first determines willfulness and the amount of the penalty—both of which Mr. Gyetvay contests. *See United States v. Gaynor,* No. 2:21-cv-382-JLB, 2023 WL 5749278, at *9 (M.D. Fla. Sep. 6, 2023) (Badalamenti, J.) (declining to find that the FBAR penalty is a fine subject to the Eighth Amendment and explaining that the determination of whether the FBAR penalty was excessive would be considered "after the Court adjudicates the calculation of the FBAR penalty should the jury

17

find willfulness"); *see also Cheffer v. Reno,* 55 F.3d 1517, 1523 (11th Cir. 1995) (holding that an excessive fines challenge is not ripe until the impending imposition of the challenged fine).  Indeed, each case Mr. Gyetvay cites in support of his argument considered this issue in the summary judgment posture.

Nevertheless, even if this issue was properly before the Court—and it is not—Mr. Gyetvay's argument would fail because the civil penalties assessed against him are not punitive penalties. *See United States v. Toth,* 33 F.4th 1, 19 (1st Cir. 2022) ("[A] civil penalty imposed under § 5321(a)(5)(C)–(D) is not a 'fine' and as such the Excessive Fines Clause of the Eighth Amendment does not apply to it."). And despite Mr. Gyetvay's contentions otherwise, the civil penalties are not tied to any criminal sanction. Rather, the penalties were imposed following an administrative proceeding, in which the IRS determined that Mr. Gyetvay had failed to timely and accurately report his financial interest in foreign bank accounts on his 2014 FBAR, as required by 31 U.S.C. § 5314.

## V.    If the Court finds the allegations of willfulness to be deficient, it should grant leave to amend.

In accordance with Rule 8, the United States has pleaded a short and plain statement of its claim. If the Court determines there is some deficiency in the allegations about Mr. Gyetvay's willfulness, the United States respectfully requests the opportunity to amend its Complaint to supplant its allegations about willfulness. *See Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where it appears a more carefully drafted complaint might state a claim upon which relief

can be granted, we have held that a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it."), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.,* 313 F.3d 541, 542 (11th Cir. 2002) (holding that a court is not required to grant leave to amend sua sponte if the plaintiff does not request it).

## CONCLUSION

Mr. Gyetvay conflates numerous separate inquiries, and raises several premature issues, to sow confusion at the motion to dismiss stage. The only issue that is properly raised here, under Rule 12(b)(6), is meritless. The Complaint details a decade-long scheme by which Mr. Gyetvay sought to hide his foreign accounts—and taxable income—from the attention of the United States. His suggestion that the United States has not alleged willfulness borders on frivolous. The motion should be denied.

Dated: November 14, 2023              Respectfully Submitted,

David A. Hubbert
Deputy Assistant Attorney General

*/s/ Jeremy A. Rill*
Jeremy A. Rill
Trial Attorney, Tax Division
*/s/ Hana B. McQuillan*
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-307-0513 (Rill)
202-616-2904 (McQuillan)
202-514-4963 (fax)
Jeremy.A.Rill@usdoj.gov
Hana.B.McQuillan@usdoj.gov

Of Counsel:

Roger B. Handberg
United States Attorney
Middle District of Florida

*Attorneys for the United States*